IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JULIUS OLIVER,                )
                              )
        Plaintiff,            )
                              )
v.                            ) CIVIL ACTION NO. 97-PWG-1997-S
                              )
USX CORPORATION,              )
                              )
        Defendant.            )

MEMORANDUM OPINION

On August 1, 1997 plaintiff filed a complaint in this court alleging racial harassment, hostile work environment and disparate application of the workplace rules. (Complaint, document #1). Plaintiff subsequently abandoned his disparate treatment claim. The only remaining claim is Mr. Oliver's contention that he was harassed on the job because of his race. Plaintiff seeks damages for mental distress. (Pretrial Order, document #12).

Defendant has filed a Motion for Summary Judgment. (Document #9). The court must determine whether the defendant is entitled to judgment as a matter of law. Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. See *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come

21

forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circum-stances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff.

Plaintiff was hired by defendant in 1969. He worked at USX until his voluntary retirement in May of 1998. In 1993 or 1994 Steve Kemp, Robert Kennedy and Barry Nichols made racial comments about plaintiff over the intercom at the Fairfield plant. (Defendant's Exhibit A, pp.178,181-83). Mr. Oliver was called a "nigger" and references were made to his eating watermelon, chitlings and "sucking" a manager under the desk. The men who made these comments

were not plaintiff's supervisors. (Plaintiff's Exhibit U; plaintiff's affidavit).[1] These men were hourly wage employees and not members of management. (Defendant's Exhibit A, pp.181-83). When plaintiff complained to Fred Brandstadt, one of his supervisors, the racial comments stopped immediately. (Defendant's Exhibit A, pp.182-83). Late in 1994, comments were again made over the intercom, this time about plaintiff's job performance, including comments on plaintiff's neck injury problems, plaintiff's wearing a brace and "getting gaps" in the furnace. (Defendant's Exhibit A, pp. 183,186; plaintiff's Exhibit U, plaintiff's affidavit).

Plaintiff perceived this second round of comments to be racially motivated because "they did not use the intercom to make fun of white people. Only me." (Exhibit A, p.186, Plaintiff's Affidavit). Plaintiff again complained to Brandstadt who took action to stop the comments. (Exhibit A, p.184). Plaintiff filed an EEOC complaint on February 16, 1995 complaining of continuing harassment by Bear Bryant, Fred Brandstadt and other managers. The EEOC charge did not, however, refer in any way to the intercom comments. (Defendant's Exhibits I and J; plaintiff's Exhibit A, p.247). During the period complained of, the terms and conditions of plaintiff's employment were governed by the February 1, 1994 Production and Maintenance Labor Agreement which contains a prohibition against discrimination against employees because of race and establishes a joint labor-management committee on civil rights to review and investigate complaints involving civil rights. (Plaintiff's Deposition, Exhibit 3-Section 4, para. 4:12-4:13; Plaintiff's deposition,

---

[1] In his affidavit, plaintiff identified his supervisors:
> My supervisors were Bear Bryant, shift coordinator of operations in the hot strip mill where I worked. Fred Bransted was the superintendent of hot rolling. Roger Renfroe was the area manager of hot rolling. Eric Gross was the maintenance shift manager of hot rolling. Mike Ely was the shift manager of hot rolling.

pp.123-125). The EEOC charge did not refer to the intercom comments which is plaintiff's primary claim in this action. (See, plaintiff's brief, p.2).

In *Sanchez v. Standard Brands, inc.*, 431 F.2d 455 (5th Cir. 1970), the court defined the degree to which the discrimination alleged in a Title VII complaint can vary from that charged in the EEOC charge:

> the allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.

*Id.* at 466, *quoting King v. Georgia Power Co.*, 295 F. Supp. 943, 947 (N.D. Ga. 1968). *See also Wu v. Thomas*, 863 F.2d 1543 (11th Cir. 1989).

The court further stated that "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* The purpose of the above rule is to prevent circumvention of the primary emphasis of Title VII "i.e., an emphasis upon voluntary settlement of all issues without an action in the District Court." 431 F.2d at 467, *quoting* from *King v. Georgia Power Co.*, 295 F. Supp. at 947.

Despite plaintiff's allegations of racial harassment both in the EEOC charge and in the civil action in this court, this characterization of conduct as racial harassment fails to satisfy the "like or related" rule articulated in *Sanchez*. In the 1995 EEOC charge, plaintiff alleged that his supervisors, specifically Bryant and Brandstad, had been harassing him since September 1994 for "not being a willing participant" in a Quality Program, for not having safety glasses, for absenteeism, for "having gaps," and for being off on union business. The intercom comments which are complained of in this action were not brought to the attention of the EEOC during its investigation of the 1995

4

EEOC charge (plaintiff's Exhibit A, p.247), occurred <u>prior</u> to the conduct which was the basis of the EEOC charge, and were made by co-workers rather than supervisors. Based on the differences between the allegations contained in the 1995 EEOC charge and this action, the court concludes that the claims in this action are not like or related to the EEOC charge and are therefore not properly before this court.

Further, plaintiff's § 1981 claim is barred by Alabama's two year residual statute of limitation which is applicable both in § 1983 and § 1981 actions. *Owens v. Okure*, 488 U.S. 235 (1989); (Section 1983 action in state with more than one statute of limitation is governed by the residual or general personal injury statute of limitation); *Jones v. Preuit and Mauldin*, 876 F. 2d 1480, 1482-83 (11th Cir. 1989); *Kimbrough v. Bowan Transportation, Inc.*, 920 F.2d 1578, 1582-83 (statute of limitations should be same for both Sections 1981 and 1983) *vacated on other grounds* (mootness), 929 F.2d 599 (11th Cir. 1991); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62 (1987) ("[b]ecause § 1981, like §§ 1982 and 1983, does not contain a statute of limitations, federal court should select the most appropriate or analogous state statute of limitation which in the case of a § 1981 or § 1983 action would be the limitations period governing personal injury actions"); *Code of Alabama*, § 6-2-38(l) (residual personal injury statute of limitation is two years). It is undisputed that the comments complained of in this action occurred in late 1994 and earlier; however, this action was not filed until August 1, 1997, well past the two year period of limitation.

Alternatively, on the merits, plaintiff is not entitled to relief under Title VII or § 1981.

In order to establish a hostile work environment claim under Title VII or Section 1981, plaintiff must show:

    (1)    he belongs to a protected group;

    (2)    he has been subject to racial harassment;

    (3)    the harassment must have been based on race;

    (4)    the harassment must have been sufficiently severe or pervasive to alter the terms and conditions of employment; and

    (5)    there must be a basis for holding the employer liable for the harassment.

*Mendoza v. Borden, Inc.*, 158 F.3d 1171-1175 (11th Cir. 1998).

Defendant argues that plaintiff has failed to satisfy the fourth element of a racial harassment claim because racial epithets which engender offensive feelings in an employee do not sufficiently affect the conditions of employment to establish a hostile work environment. In *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986), however, the Court noted that while general epithets alone do not establish a hostile work environment:

> When the work place is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated."

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1992), *citing Meritor, supra.*

Racial slurs can create an abusive working environment if they are so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility." *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990) (plant manager and supervisor frequently made racially derogatory remarks in the presence of and about black employees). In

6

determining whether a hostile work environment was created, the court considers the frequency and severity of the discrimination, whether the conduct is threatening or humiliating and whether the condition unreasonably interferes with plaintiff's work performance. *Harris*, 510 U.S. at 23; *Edwards*, 49 F.3d at 1522.

Plaintiff alleges two incidents involving comments made by co-workers over the intercom which occurred almost one year apart.[2] There is no doubt that the comments which included calling plaintiff a nigger were blatantly racial in nature and offensive. The comments concerning plaintiff eating watermelon and chitlings were also racial because they were premised upon racial stereotyping rendering these comments equally offensive. The comment concerning plaintiff sucking a manager under the desk, while offensive, had no racial implications. Only those incidents plaintiff was aware of could have contributed to his subjective view of a hostile environment and altered the conditions of his employment, thus giving rise to a Title VII violation. *Harris*, 510 U.S. at 21-22; *Edwards*, 49 F.3d at 1522. Although plaintiff stated in his deposition that he was told that comments were made when he was not around,[3] plaintiff has not identified who told him that the comments were made when he was not around nor when he was informed of the comments. Because

---

[2] While plaintiff attempts to characterize the intercom comments as "continuous and relentless," the conduct complained of began in late 1993 or early 1994 and continued until February 1995 -- except for the approximately one year period that the comments ceased after plaintiff complained to Brandstadt about the comments. (Plaintiff's Exhibit U; plaintiff's affidavit).

[3] In his deposition plaintiff stated that he happened to hear the racial comments over the intercom only one day; however, he further stated :
    A:    See, this was continuous. It was on the speaker. So this wasn't just a one day thing. I just happened to hear it that one day. So management in the Hot Strip heard it all the time. I mean they would hear it when I wasn't even there.
    Q:    How do you know that?
    A:    Because I was told it was going on.
(Defendant's Exhibit A, p.185).

of the lack of specificity concerning how and when plaintiff allegedly learned of the comments, plaintiff's allegation that he "was told" that comments were made when he was not present should not be relied upon in ruling on plaintiff's motion for summary judgment.

Because plaintiff's description of the comments occurring in late 1994 are vague, the court is uncertain of the precise nature of the second round of comments; however, comments about plaintiff's neck problems, plaintiff's wearing a brace and "getting gaps" in the furnace have no racial implications and are not offensive based on the limited facts before this court. Although plaintiff alleges that the comments about job performance are racial because the offenders have not made such comments about white workers, plaintiff has not identified any white workers who would have been positioned to be open to such comments. While the first set of comments may have been humiliating, they were not threatening in nature. There is no evidence that the alleged hostile work environment created by the intercom comments interfered with plaintiff's job performance. Taking all of these factors into consideration, the court concludes that plaintiff cannot establish the minimum threshold of proof that he was subjected to a hostile work environment.

Assuming that a hostile work environment existed, USX is directly liable only if a plaintiff presents evidence to show that after USX received notice, it failed to take "prompt remedial 'action,' that is, action 'reasonably likely to prevent the misconduct from recurring.'" *Reynolds v. CSX Transportation, Inc.*, 115 F.3d 860, 867 (11th Cir. 1997); *Kilgore v. Thompson and Brock Management, Inc.*, 93 F.3d 752 (11th Cir. 1996).

The admissible evidence and the evidence which may become admissible before this court indicates that the comments were promptly halted by the employer when reported by plaintiff.

Although the comments stopped after plaintiff's complaint, plaintiff complains that management's reactions of talking to the offenders was not appropriate as is evident from the fact that the comments (although different in nature) resumed again approximately one year later. (Plaintiff's brief, p.6). Plaintiff apparently maintains that the offenders should have been disciplined. In *Coates v. Sundor Brands, Inc.*, 160 F.3d 688 (11th Cir. 1998) the Court of Appeals for the Eleventh Circuit held that it was not unreasonable for the human resources manager to conclude that a talk between a harasser and co-worker who was also an ordained minister ended the sexual harassment matter. 160 F.3d at 695. Clearly every harassment does not require discipline. After plaintiff informed his supervisor of the racial comments, the comments stopped for almost a year. When new comments were made, they were not racial in tone. Though comments by the offenders directed toward plaintiff resumed nearly a year later, the court cannot conclude that the supervisor's response to the racial comments was not effective.

In *Faragher v. City of Boca Raton*, ___ U.S. ___, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries v. Ellerth*, ___ U.S. ___, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), the Supreme Court held that when a supervisor creates a hostile environment in the work place, employers are vicariously liable even though those at the highest executive levels do not receive actual notice. In *Coates, supra*, the Court of Appeals for the Eleventh Circuit applied *Faragher* and *Burlington Industries* "to a case where the allegation is that the supervisor's inaction with respect to a hostile work environment created by co-worker harassment facilitated, prolonged, or otherwise failed to arrest the harassment where the supervisor knew or should have known of it." 160 F.3d at 693. Although the alleged hostile work environment was not created by plaintiff's supervisors, USX may be liable under certain circumstances.

Plaintiff alleges that management knew about the comments because the comments could be heard all over the plant where the intercoms are connected but that management did nothing until plaintiff complained and only then did defendant discipline the offenders. He states he was totally humiliated by this treatment and by management's lack of concern. (Plaintiff's affidavit, unnumbered p.2). Plaintiff, however, produced no admissible evidence that the comments were made more than once or that intercoms were connected in areas where members of management were located. Plaintiff has failed to show that management knew or should have known about the alleged harassment.

Further, in *Faragher*, the Supreme Court held:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule. Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

118 S.Ct. 2293.

In this case, "no tangible employment action, such as discharge, demotion, or undesirable reassignment," 118 S.Ct. at 2293, was taken. Although plaintiff alleges he has suffered "employment adversity" because his supervisors would not let him "swap around" like other white employees and because they would not let him work straight time (plaintiff's brief, p.14), this does not appear to be

the "tangible employment action" envisioned in *Faragher* and *Burlington Industries, Inc. v. Ellerth*, ___ U.S. ___, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Burlington* the Supreme Court held:

> A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.
>
> . . . .
>
> A tangible employment action in most cases inflicts direct economic harm.

118 S.Ct. at 2268.

Plaintiff has not alleged economic harm.

Although the Basic Labor Agreement contained a prohibition against discrimination based on race, plaintiff did not file a grievance pursuant to the Basic Labor Agreement but, instead, complained to his supervisor in early 1994 when racial comments were made over the intercom and again in late 1994 when job performance comments were made over the intercom. As previously noted, plaintiff's supervisor took prompt action each time, calling in the offenders and talking to them which resulted in the comments stopping. (Defendant's Exhibit A, pp.182-84). If the court were to assume that a hostile work environment was created by plaintiff's co-workers and plaintiff's supervisors "facilitated, prolonged, or otherwise failed to arrest the harassment where the supervisor knew or should have known of it," defendant is nevertheless entitled to the benefit of the *Faragher* defense and is entitled to summary judgment based on the facts before this court.

Based on the foregoing, the magistrate judge concludes that the § 1981 and Title VII claims are not properly before this court. Alternatively, the magistrate judge concludes that the §

11

1981 and Title VII claims are without merit. Defendant's motion for summary judgment is due to be GRANTED. A separate Final Judgment consistent with this Memorandum Opinion will be entered simultaneously herewith.

DONE this the **3rd** day of March, 1999.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE